UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-21829-CIV-GRAHAM/GOODMAN

**CONSENT CASE**

MAURICIO ALTMAN,  )
 )
       Plaintiff,  )
vs.  )
 )
STERLING CATERERS, INC.,  )
JONATHAN RAPP,  )
 )
       Defendants.  )
_____  )

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, by and through undersigned counsel, and states that Plaintiff is entitled to summary judgment as to the below described issues, pursuant to Southern District Local Rule 56.1 and FRCP 56, and shows the Court that there are no genuine issues of material fact to preclude summary judgment as to such issue as follows:

1. Plaintiff moves for summary judgment on the following 4 issues:

    1) Defendant Sterling Caterers, Inc. is an enterprise covered under the Fair Labor Standards Act;

    2) Plaintiff was an employee of Defendant Sterling Caterers, Inc. and was not an independent contractor;

    3) Plaintiff was not an executive exempt from overtime pay;

    4) The Fair Labor Standards Act does not have a ministerial exemption, therefore any ministerial exemption cannot apply towards Plaintiffs work for Defendants;

5) The individual Defendant Jonathan Rapp was Plaintiffs' employer along with Defendant Corporation under the FLSA and would therefore be jointly and severally liable along with the Defendant Corporation for any wages owed to Plaintiff.

## **STANDARD FOR SUMMARY JUDGMENT**

"Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). Accepting this evidence as truthful, the Court must view the record and all factual inferences there from in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (citing First *Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288 (U.S. 1968)); *see also Anderson*, 477 U.S. at 247-48 ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact").

### B. Sterling Caterers, Inc. is an Enterprise Covered under the FLSA:

Defendants Corporation is an enterprise covered under the act. As acknowledged in *Rodriguez v. Diego's Rest., Inc.*, 619 F. Supp. 2d 1345, 1350 (S.D. Fla. 2009), the issue of coverage under the FLSA has incorrectly been coined as an issue of Subject Matter Jurisdiction.

29 U.S.C. 203(s)(1) defines "enterprise" coverage as an enterprise that has employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000."

As it relates to the second element of whether Defendants annual gross volume of sales or business done exceeded $500,000 annually for the years 2009, 2010 and 2011, Jonathan Rapp, Vice President of Sterling Caterers, Inc. testified that the Defendant Corporation grossed over $500,000 annually. [Rapp Depo P. 3-4].

Additionally, as set forth in the Eleventh Circuit's recent decision in *Polycarpe v. E & S Landscaping Serv.*, 616 F.3d 1217 (11th Cir. 2010) "stating that we imagine that, where a restaurant uses interstate cooking equipment as an article to perform its commercial activity of serving food, the restaurant is engaged with "materials" that will subject the business to FLSA coverage." Id at 1225. "Whether an item counts as "materials" will depend on two things: "1) whether, *in the context of its use,* the item fits within the ordinary definition of "materials" under the FLSA and 2) whether the item is being used commercially in the employer's business." *Id* at 1225. Said ruling followed a string of cases in this District that found where the $500,000 prong has been met, if Defendants business has two or more employees on a regular basis handling materials that were at any point in time moved in interstate commerce, said enterprise would be covered under the Fair Labor Standards Act. The Eleventh Circuit fell just short of stating that

every business that grosses $500,000 is covered under the FLSA, and perhaps even expressly stated that this is not the case. However, the reasoning behind said statements by district courts cited below can easily be attributed to the fact that almost every business that has two or more employees, regularly "handle" materials that have moved in interstate commerce more so today than when the Fair Labor Standards Act was enacted or even amended in 1974. This is simply attributed to the logical reasoning that the accessibility of commerce today is greater than at any other point in our history. One only need to take a look around ones office to see the impact of interstate commerce, such as copy machines made in Japan, fax machines and computers from China, scanners from Taiwan, pens from Mexico and other items manufactured throughout the United States and the World. As such, the Court's have made said statements concluding that when the $500,000 prong is met, it is likely that said corporation is an enterprise covered under the FLSA.

As stated in *Galdames v. N & D Inv. Corp.*, 2008 U.S. Dist. LEXIS 73433 (S.D. Fla. 2008):

> "It is notable how many courts in the past three-and-a-half decades have concluded that virtually any enterprise that meets the statutory annual gross sales requirement is subject to the FLSA. *See, e.g., Dunlop v. Indust. America Corp.*, 516 F.2d 498, 500-02 (5th Cir. 1975) (referring to the 1961 expansion, and noting "[t]his change extended coverage to businesses with employees engaged in handling or utilizing goods after they had ceased the interstate portion of their movement. This approach reached those nearer the end of the chain of distribution, e. g., retail and service establishments whose businesses were otherwise local in character."); *Archie v. Grand Cent. Partnership, Inc.*, 997 F.Supp. 504, 530 (S.D.N.Y. 1998) ("The bill also adds the word 'or materials' after the word 'goods' to make clear the Congressional intent to include within this additional basis of coverage the handling of goods consumed in the employer's business, as, e.g., the soap used by a laundry. . . . Since 1974, courts facing the issue presented here have unanimously come to the same conclusion: local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce."); *Dole v.*

> *Bishop*, 740 F. Supp. 1221, 1225-26 (S.D.Miss.1990) ("[P]ursuant to a 1974 amendment, . . . in order for an enterprise to be engaged in commerce, it must have employees 'handling, selling, or otherwise working on goods or materials' that have moved in interstate commerce. This amendment adding the words 'or materials' leads to the result that virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.") (internal citation and emphasis omitted); *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.*, No. 8:07-cv-2359-T-23TGW, 2008 U.S. Dist. LEXIS 23007, 2008 WL 793660, at *1 (M.D.Fla. Mar. 24, 2008**)** ("[E]nterprise coverage embraces virtually every business whose annual gross volume of sales or business is $ 500,000 or more . . . .")"

In the case at hand, a majority of the food products worked on by Defendants were manufactured outside the State of Florida. [Rapp Dep. P. 9] and Defendants had two or more employees that handled these out of state materials and food products on a regular and consistent basis throughout the relevant time period. [Rapp Depo. P. 10]. Therefore, as the Defendant Corporation grossed over $500,000 annually and Defendants had two or more employees that regularly handled materials that came from outside the state of Florida, the Defendant Corporation is an enterprise covered under the Fair Labor Standards Act.

**C. Independent Contractor:**

Defendants allege that Plaintiff was employed by an organization called "OK" and received a 1099 for his work at Defendants corporation and therefore should be considered an independent contractor.

An employee, as defined by 29 U.S.C. § 203(e)(1), is any individual employed by an employer. An employer includes any person acting directly or indirectly in the interest of an employer in relation to the employee. 29 U.S.C. § 203(d). The term "employer" is interpreted more broadly under the Act than common law for remedial purposes. *See, e.g., Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2nd Cir. 1999); *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d

962, 965 (6th Cir. 1991), *citing McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989); *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983); *Falk v. Brennan*, 414 U.S. 190, 195 (1973). Section 203(d) specifically permits joint employment relationships to be recognized for purposes of FLSA lawsuits. Several employers may be liable for an employee's overtime wages under the Fair Labor Standards Act. *See, Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991). See also 29 CFR 791.2 **"…[**i]f the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act." "Further, "that the appellants may not have had the intention to create an employment relationship is irrelevant; 'it is sufficient that one person suffer or permit another to work.'" *Donovan,* 676 F.2d at 471 (quoting *Brennan v. Partida*, 492 F.2d 707, 709 (5th Cir. 1974))." *Escobar v. GCI Media, Inc*., 2009 U.S. Dist. LEXIS 52719 (S.D. Fla. June 22, 2009).

The Court's have used the "economic realities test" in determining whether an individual qualifies as an employer or an independent contractor. *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1319 (S.D. Fla 2001). "To determine an individual's employment status, the court "must evaluate the economic realities of the individual case" by focusing on whether the plaintiff was economically dependent on the employer. *Antenor,* 88 F.3d at 932-33. In doing so, the court must look at the surrounding circumstances of the whole activity and not on isolated factors." (citations omitted). *Escobar v. GCI Media, Inc*. at 6.

In applying the "economic realities test," the Court should consider the following factors: (1) the nature and degree of control of the workers by the alleged employer; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skills; (3) the alleged

employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered required a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. *Santelices* at 1319 citing to *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) (footnote omitted).

> No one factor is controlling; nor is the list exhaustive. The factors simply summarize the matters deemed relevant by the Supreme Court in *Bartels v. Birmingham*, 332 U.S. 126, 130, 91 L. Ed. 1947, 67 S. Ct. 1547 (1947), *United States v. Silk*, 331 U.S. 704, 716, 91 L. Ed. 1757, 67 S. Ct. 1463 (1947), and *Rutherford Food*, 331 U.S. at 729, to help gauge the degree of *dependence* of an alleged employee on the business with which they are connected.

*Santelices* at 1319. In the case at hand, Plaintiff has filed his lawsuit against Sterling Caterers, Inc. alleging that Sterling Caterers, Inc. was his employer under the Fair Labor Standards Act. When analyzing the economic realities test, the overwhelming set of facts clearly establish that Plaintiff was employed as an employee by Sterling Caterers, Inc. and was not an independent contractor.

1. **The nature and degree of control:**

When Plaintiff was first hired, Plaintiff had to meet with Defendants in order to have the workload explained to him. [Golowinski Depo P. 26 -27]. Defendants would be the one to tell Plaintiff what time he was required to show up for work each day. [Golowinski Depo P. 25-26]. Defendants' instructed Plaintiff as to the hours that Plaintiff was required to work and not the Circle K. [Golowinski Depo P. 42 and 61]. Defendants kept track of the hours that Plaintiff worked in order to pay Plaintiff and were the ones responsible for paying Plaintiff. [Golowinski Depo P. 60].

As Defendants' controlled the hours worked by Plaintiff, instructed Plaintiff as to the hours he was required to work, and were the ones that explained the workload required for said position to Plaintiff, Defendants exerted sufficient control to establish an employer – employee relationship. "The Antenor Court stated that indicia of control include determining the number of workers hired for a job, when work should begin on a particular day, which workers should be assigned to specific tasks, and whether a worker should be disciplined or retained. See *Antenor*, 88 F.3d at 933." *Jeanneret v. Aron's E. Coast Towing*, 2002 U.S. Dist. LEXIS 12200 (S.D. Fla. Jan. 28, 2002).

2.  **Employee's opportunity for profit or loss depending upon his managerial skills:**

The facts in this case establish that Plaintiff did not have any opportunity to earn more or less based his limited skills. Plaintiff was merely an hourly employee who earned $15/hr for his work. [Rapp. Depo. P. 43 L. 1-6, Golowinski Depo P. 39, L. 22]. The classic example of an independent contractor that has an opportunity for profit or loss based on his managerial skills would be a painter, construction worker or a plumber that get paid by the job performed and render services to several clients. If they manage their time correctly and efficiently, they can finish one project and still have time to start or complete another project thereby earning extra income based on their managerial skills. If, on the other hand, they manage their time inefficiently, they stand to incur a loss for said inefficient work. Plaintiff, however was an hourly employee who was paid based upon the amount of hours that he was hired to work. As a result, Plaintiff did not stand to profit or lose money based on his limited skills. Furthermore, Defendants business did not stand to profit or loss based on Plaintiff's managerial skills. [Rapp Depo. P. 28, L. 13-17]. Therefore, said element establishes that Plaintiff was an employee of Sterling Caterers, Inc. and not an independent contractor.

3. **The alleged employee's investment in equipment or materials required for his task:**

In the case at hand, there were limited if any materials Plaintiff was required to use for work performed at Defendants' business. The only two items perhaps used by Plaintiff was a lock and key for the refrigerator/freezer that was purchased by Defendants [Golowinski Depo. P. 26] or oven mitts used by Plaintiff which belonged to Defendants. [Golowinski Depo P. 56, L. 4-11]. As Plaintiff did not invest in any materials or equipment for the job, said element establishes that there is an employer-employee relationship between Plaintiff and Sterling Caterers, Inc.

4. **Whether the service rendered required a special skill:**

There is no special skill required to perform the work done by Plaintiff in the case at hand. Perhaps, Defendants will argue in their reply that being a "Mashgiach" requires a special skill. However, as testified to by Rabbi David Golowinski, Plaintiff did not have the expertise to kosher equipment such as by using a blow torch to kosher an oven [Golowinski Depo P. 55, L. 10-25 and P. 56, L. 1- 3]. Instead, Rabbi Golowinski would have to be called in to perform said task as Plaintiff was not qualified to simply use a hand held blow torch to kosher items in a kitchen. Therefore, the facts in the case establish that Plaintiff performed his work with minimal training[1], if he received any training at all. Therefore, the facts support the assertion that Plaintiff's duties did not require any special skill and that Plaintiff was an employee and not an independent contractor.

5. **The degree of permanence of the working relationship;**

As referenced above, the classic example of an independent contractor perhaps would be a painter or plumber who gets paid to perform a specific job for many clients. A plumber's job is complete when he fixes the leaky pipe while a painter's job is complete when he finishes

---

[1] Plaintiff is not a Rabbi nor did he obtain any permit/license for his job with Defendants.

painting a room or home. In these examples, there is no permanent relationship. The relationship ends as soon as the task is completed. In the case at hand, Plaintiff worked for Defendants nearly each and every day for two and a half years.  There is absolutely no question as to the degree of permanence in this working relationship which is further indicia of an employment relationship.

**6. Whether the service rendered is an integral part of the alleged employer's business.**

Defendants operate a catering business that caters to both religious and non-religious clientele and events. For the purpose of providing catered food to the Jewish religious clientele, Plaintiff's work performed was an integral part of Defendants business as a mashgiach is required to ensure that the food being prepared and served is, in fact, kosher. As such, Plaintiff's work performed was an integral part of Defendants business.

As stated above, "no one factor is controlling" *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1319 (S.D. Fla 2001).  The facts nevertheless establish that Plaintiff was economically dependent on his work with Defendants. Furthermore, when each and every factor establishes that Plaintiff was an employee and that Defendants was his employer, the Court must find that Plaintiff was an employee of Defendant Sterling Caterers, Inc. and not an independent contractor.

**D. The executive exemption does not apply to Plaintiff's work for Defendants.**

The employer carries the burden of proving an exemption under the Fair Labor Standards Act, *Hogan v. Allstate Ins. Co.,* 361 F.3d 621, 625 (11th Cir. 2004), and in determining whether an exemption exists, the overtime provisions of Section 207 are narrowly construed against the employer. *Atlanta Professional Firefighters Union, Local 134 v. Atlanta,* 920 F.2d 800, 804 (11th Cir. 1991); *see also Avery v. City of Talladega, Ala.,* 24 F.3d 1337, 1340 (11th Cir. 1994).

The employer must prove the applicability of an exemption by clear and affirmative evidence.

*Klinedinst v. Swift Invs., Inc.,* 260 F.3d 1251, 1254 (11th Cir. 2001).

> Pursuant to 29 C.F.R. § 541.2, "A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.: See also *Gregory v. First Title of America, Inc.* 555 F. 3d 1300 (11th Cir. 2009). The Department of Labor ("DOL") provides guidance for courts to consider when determining whether someone should be deemed an "executive." This includes: (1) the employee earns at least $455.00 per week (2) manages, as his primary duty, a recognized department or subdivision, (3) the employee customarily and regularly directs the work of two or more other employees, and (4) the employee has authority to hire or to fire other employees. 29 C.F.R. §541.100(a). In further determining whether an individual's position is primarily management, the DOL sets out five factors to consider: (1) the amount of time spent performing managerial duties; (2) the relative importance of an employee's managerial and non-managerial duties; (3) the frequency with which an employee may exercise discretionary powers: (4) the employee's relative freedom from supervision; and (5) the relationship between the purportedly exempt employee's wages and the wages paid to other employees performing similar, non-exempt work. *Gregory v. First Title of America, Inc.*, 555 F. 3d 1300, 1303 (11th Cir. 2009)(citing 29 C.F.R. §541.700 (2002)).

*Ramirez v. Sharpton Brunson & Company P.A.*, Case No.: 08-21739-Civ-Cooke/Bandstra, Docket Entry 71 (S.D. September 28, 2009).

The first element requires that Plaintiff be paid a "salary" of $455 a week. 29 C.F.R. 541.100 (a)(1) "The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee (1) Compensated on a salary basis at a rate of not less than $455 per week. Said provision requires that Plaintiff be paid on a salary basis and not on an hourly basis. See 29 C.F.R. 541.602(a):

> General rule. An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a **predetermined amount constituting all or part of the employee's compensation,** which amount is not subject to

> reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee **must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked**… [Emphasis added].

29 C.F.R. 541.602(a). In the case at hand, it is undisputed that Plaintiff was paid as an hourly employee. Plaintiff was paid $15/hr. [Golowinski Depo P. 39, L. 22]. An hourly employee gets paid based upon the amount of hours he worked. For example, if Plaintiff worked 40 hours a week he would get paid $600, however if he only worked 30 hours a week he would only get paid $450 for said work. There was no predetermined salary that Plaintiff earned on a weekly basis. It appears that Defendants' argument is not based upon Plaintiff having a predetermined salary, but rather on the fact that Plaintiff worked so many hours each week that he always earned above $455 a week. However, said contention goes against the very code of federal regulation said exemption is based upon. Plaintiff never received a predetermined salary for each work week regardless of the hours worked. To the contrary, Plaintiff was only paid based upon the hours that he worked. Said fact is illustrated by Defendants' exhibit "A" to Defendants' Motion for Summary judgment which establishes that Plaintiff's pay fluctuated from week to week. As Defendants have not met the first element of the executive exemption, the Court need not address the remaining elements of the executive exemption and Defendants Motion for Summary Judgment must be denied.

Furthermore, none of the remaining elements required for the executive exemption have been met. As stated above, the employer carries the burden of proving an exemption under the Fair Labor Standards Act, *Hogan v. Allstate Ins. Co.,* 361 F.3d 621, 625 (11th Cir. 2004) and Defendants have not established any of the remaining elements required for the executive exemption. Defendants have not set forth any evidence that Plaintiff manages, as his primary

duty, a recognized department or subdivision of Defendants business and that Plaintiff customarily and regularly directed the work of two or more other employees, and that Plaintiff had authority to hire or to fire other employees. In fact, the evidence demonstrates that Plaintiff did not have the power to hire or fire employees. [Golowinski Depo P. 19, L. 17]. Plaintiff was simply a "mashgiach" who was paid by the hour and was clearly not an executive as contemplated by the Fair Labor Standards Act. Therefore, Plaintiff respectfully requests that the Court enter Summary Judgment in Favor of Plaintiff.

   E.  **Ministerial Exemption:**

If there is one thing that Defendants are correct about, it is that this is a case of first impression in this Circuit. It is a case of first impression because Congress never codified a ministerial exemption for the Fair Labor Standards Act. Congress clearly delineated the exemptions from overtime and minimum wages in 29 U.S.C. 213 et seq. However, 29 U.S.C. 213 and every other provision of the Fair Labor Standards Act is completely devoid of any reference to the ministerial exemption, perhaps because no such exemption exists. Furthermore, as stated above, exemptions under the Fair Labor Standards Act are to be construed strictly and narrowly in favor of coverage of employees, affording maximum coverage to the employees due to the broad remedial purpose behind the Act. *Nicholson v. World Business Network, Inc.,* 105 F.3d 1361 (11th Cir. 1997). Therefore, if the Court's are required construe codified exemptions strictly and narrowly in favor of coverage, the Court should certainly be required to construe a non-existing exemption, strictly and narrowly in favor of coverage for the employee. "…the Court consistently has refused to exempt from coverage employees not within a specific exemption." *Patel v. Quality Inn South*, 846 F.2d 700, 702 (11th Cir. 1988).

Defendants' sole basis for the ministerial exemption is derived from the Fourth Circuit decision in *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299 (4th Cir. 2004) which borrowed the ministerial exemption from Title VII cases. Furthermore, the sole case the Court in *Shaliehsabou* relied upon in finding that the ministerial exemption could possibly apply in an FLSA context was the case of *Dole v. Shenandoah Baptist Church*, 899 F.2d 1389, 1395 (4th Cir. 1990). However, the *Dole* Court made two findings; (1) the FLSA applies to church operated schools; and (2) the ministerial exemption did not apply to teachers. However, the Court in *Dole* did not perform any analysis into whether the ministerial exemption applies or exists in an FLSA context. The Court made the assumption that, even if it did exist, it could not apply to teachers of a church operated school.

In footnote 6 of the *Dole* decision, the Fourth Circuit stated "The ordinary commercial activities of religious organizations are covered by the Act. See, e.g., id. 471 U.S. at 298-99; *Brock v. Wendell's Woodwork*, 867 F.2d 196, 198-99 (4th Cir. 1989); *Mitchell v. Pilgrim Holiness Church Corp.*, 210 F.2d 879, 884 (7th Cir.), cert. denied, 347 U.S. 1013, 98 L. Ed. 1136, 74 S. Ct. 867 (1954)." Dole at 1394. "[C]ommercial activities of religious institutions are covered by the FLSA. See *Alamo*, 471 U.S. at 296 ("The statute contains no express or implied exception for commercial activities conducted by religious or other nonprofit organizations.")" *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 307 (4th Cir. 2004). The Court in *Shaliehsabou* went on to state that "the ministerial exception to the FLSA applies only where the employer is a religious institution and the employee's primary duties are ministerial in nature. The exception does not apply to the religious employees of secular employers or to the secular employees of religious employers." *Shaliehsabou* at 307. In *Shaliehsabou,* the Court found the Defendant, Hebrew Home of Greater Washington, Inc., to be a religious institution

based on the fact that the (1) by-laws of said organization defined the Hebrew Home as religious and charitable non-profit corporation; (2) the home maintained a Rabbi on its staff; (3) employed mashgichim; and placed a mezuzah on every resident's doorpost. *Shaliehsabou* at 310. As noted above, Plaintiff has sued Sterling Caterers, Inc. which is a for profit corporation engaged in the service of providing both kosher and non-kosher food. Defendants' underlying tenets are clearly distinguishable from *Shaliehsabou*. In *Shaliehsabou,* the Defendant Corporation was a non-for profit organization with underlying religious principles, who had a Rabbi on staff. In the present case, the corporate Defendant is a for profit corporation engaged in catering kosher and non-kosher events. Defendants want to create a ministerial exemption where there is none and then broaden said interpretation to apply to every restaurant that serves a religious clientele on a part time basis. To borrow a phrase from the *Dole* Court, "as the district court has observed, the exemption of these teachers would "create an exception capable of swallowing up the rule." *Dole* at 1397. The Dole Court was obviously referring to creating a bright line rule finding all teachers working in a church run school to be exempt under the ministerial exemption. In the case at hand, Defendants' catering business should be viewed no different than a restaurant that serves kosher food to Jews or Halal meat to Muslims. Just because a catering business serves a religious clientele, does not render said organization a "religious institution." Defendants' catering business is designed to earn a profit with a portion of their business module geared towards serving orthodox Jews. The mere fact that Defendants cater events of religious Jews does not by said definition render said organization a "religious institution." As stated in the current *Field Operations Handbook*, Wage and Hour Division, U.S. Dep't of Labor, § 10b03(a) (1993).[2]

> There is no special provision in the FLSA which precludes an employee-employer relationship between a religious, charitable or nonprofit organization and persons who perform work for such an

---

[2] Can be found at http://www.dol.gov/whd/FOH/

> organization. For example, a church or religious order may operate an establishment to print books, magazines, or other publication and employ a regular staff who do this work as a means of livelihood. In such cases there is an employee-employer relationship for purposes of the Act.

As noted above, "the ministerial exception to the FLSA applies only where the employer is a religious institution and the employee's primary duties are ministerial in nature. The exception does not apply to the religious employees of secular employers or to the secular employees of religious employers." *Shaliehsabou* at 307.[3] In the case at hand, the very first element would not apply as the Defendant Corporation is a secular corporation and not a religious entity.

Furthermore, even if the Court somehow found a catering business to be a religious institution, Plaintiff's duties were secular in nature and not religious in nature. While it is true that Plaintiff's job was to ensure that the food served to religious clientele was, in fact, kosher and met the high standards maintained by orthodox Judaism, the purpose behind his position was secular in nature. The obvious secular nature of Plaintiff's position was to help Defendants' Corporation become more profitable as the purpose of Defendants' Corporation was to earn a profit [Rapp Depo. P. 42, L. 4-14]. By performing his task, Plaintiff allowed Defendants to charge higher prices for the sale of said kosher products. By performing his job, Plaintiff allowed Defendants to charge the higher prices associated with the purchase of kosher foods. Perhaps nothing can be considered more secular in nature than helping a for profit corporation earn a profit.

Furthermore, as stated by the *Field Operations Handbook*, Wage and Hour Division, U.S. Dep't of Labor, § 10b03(a) (1993) " …For example, a church or religious order may operate an

---

[3] If the ministerial exemption exists at all.

establishment to print books, magazines, or other publication and employ a regular staff who do this work as a means of livelihood. In such cases there is an employee-employer relationship for purposes of the Act." Although the manufacturing of books by the Church may have an underlying religious purpose[4], such as the printing of a Bible for sale, the fact that said Bible is being created for the purpose of earning a profit, said sale becomes secular in nature and the employee manufacturing the Bible is not a minister but rather just an employee trying to earn a living. The same principle must be applied to Plaintiff's work for Defendants. Plaintiff's work as a mashgiach is akin to that of a Church run establishment that prints books. The creation of the book at the bookstore or the sale of gefilta fish/matza ball soup by a caterer, are secular in nature as the purpose behind both acts are simply to earn a profit for a corporation whose sole purpose is to make money for its shareholders. Therefore, Plaintiff's work must be considered secular in nature and cannot fall under the ministerial exemption.

Additionally, Plaintiff's counsel finds the reasoning of the dissenting opinion in *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 369 F.3d 797 (4th Cir. 2004) rather persuasive. Although the majority denied a hearing en banc, the dissenting opinion and thorough analysis of the dissenting opinion establishes that no ministerial exemption applies under the Fair Labor Standards Act. As exemptions under the Fair Labor Standards Act are to be construed strictly and narrowly in favor of coverage of employees, affording maximum coverage to the employees due to the broad remedial purpose behind the Act, *Nicholson v. World Business Network, Inc.,* 105 F.3d 1361 (11th Cir. 1997), Plaintiff respectfully requests that the Court not

---

[4] ""Great Commission" of Matthew 28:19-20 requires the church to evangelize, baptize, and teach: Go ye, therefore, and teach all nations, baptizing them in the name of the Father, and of the Son, and of the Holy Ghost, teaching them to observe all things whatsoever I have commanded you and, lo, I am with you always even unto the end of the world." Dole v. Shenandoah Baptist Church, 899 F.2d 1389, 1396 (4th Cir. 1990).

create any exemption where no exemption exists and if the Court finds the ministerial exemption to exist, to apply it strictly and narrowly in favor of coverage under the Fair Labor Standards Act.

### F. Defendant Jonathan Rapp Qualifies as Plaintiff's Employer under the Fair Labor Standards Act:

The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). The term "employer" ought be interpreted more broadly under the Act than common law for remedial purposes. *See, e.g., Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2nd Cir. 1999); *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir. 1991), citing *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989); *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983); *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

Further, multiple employers may be responsible for compliance with the FLSA within one business organization. *See*, *Elliott Travel & Tours, Inc.,* 942 F.2d at 965; *Agnew*, 712 F.2d at 1510. "[B]oth the employing corporation and the individual responsible for operation thereof may be employers for purposes of the FLSA." *Figueroa v. America's Custom Brokers, Inc.,* 48 F.Supp.2d 1372, 1377 (S.D. Fla. 1999), *citing Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986). In the Eleventh Circuit, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel*, 803 F.2d at 637-38, *quoting Agnew*, 712 F.2d at 1511.

Financial control over a corporation is a significant factor in determining "employer" status. See, *Elliot Travel & Tours*, 942 F.2d 966 (6th Cir. 1991); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984)(imposing FLSA liability on a "top man" who guided corporate policies

and controlled "purse strings"); *Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d 190, 193-95 (5th Cir. 1983)(liability for controlling finances and dominating the administration); *Dole v. Simpson*, 784 F.Supp. 538, 545-47 (S.D. Ind. 1991).

Personal liability may also arise from significant ownership interest coupled with operational control. *See, Agnew*, 712 F.2d at 1514. Liability may also be found even if control is restricted or exercised only occasionally as such does not diminish the significance of the existence of such control. *Herman*, 172 F.3d at 139, *quoting*, *Donovan v. Janitorial Servs, Inc.*, 672 F.2d 528, 531 (5th Cir. 1982). See also *Olivas v. A Little Havana Check Cash, Inc.*, 324 Fed. Appx. 839, 846 (11th Cir. 2009).

In the case at hand, Jonathan Rapp is a four percent owner in Sterling Caterers, Inc. [Rapp Depo. P. 4]. Jonathan Rapp is the Vice President of Sterling Caterers, Inc. [Rapp Depo. P. 4]. From 2008 through the present date, Jonathan Rapp is the one that has had the day to day operational control over Sterling Caterers, Inc. [Rapp Depo. P. 6, L. 13-17]. Jonathan Rapp is a signatory on Defendant's business operating account [Rapp Depo. P. 6]. There is no one else at Sterling Caterers, Inc. that has more operational control over Sterling Caterers, Inc. than Jonathan Rapp. [Rapp Depo. P. 6-7].

Jonathan Rapp, is one of the owners of the Defendant Corporation, is a corporate officer of the Defendant corporation who ran the day to day operations of Defendants business, and was the one that had the day to day operational control over the Defendant Corporation. Therefore, Jonathan Rapp should be deemed Plaintiff's employer as defined by the Fair Labor Standards Act, and are therefore jointly and severally liable along with the Defendant Corporation should a jury return a verdict in favor of Plaintiff for unpaid overtime wages.

Wherefore, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Summary Judgment in its entirety.

                Respectfully submitted,

                Daniel T. Feld, Esq.
                J. H. Zidell, P.A.
                Attorneys for Plaintiff
                300-71st Street, Suite 605
                Miami Beach, Florida 33141
                Tel: (305) 865-6766
                Fax: (305) 865-7167

                By:__/s/ Daniel T. Feld _____
                    Daniel T. Feld, Esq.
                    Florida Bar No.: 0037013

### **CERTIFICATE OF SERVICE:**

I hereby certify that a true and correct copy of the foregoing Plaintiff's Motion for Summary Judgment was sent via CM/ECF to Alvin Entin, Esq., Entin & Della Fera, P.A., 110 S.E. 6th Street, Suite 1970, Fort Lauderdale, Florida 33301, Fax: (954) 764-2443, email: Entinmarg@aol.com on this 9th day of April 2012.

                Daniel T. Feld, Esq.
                J. H. Zidell, P.A.
                Attorneys for Plaintiff
                300-71st Street, Suite 605
                Miami Beach, Florida 33141
                Tel: (305) 865-6766
                Fax: (305) 865-7167

                By:__/s/ Daniel T. Feld _____
                    Daniel T. Feld, Esq.
                    Florida Bar No.: 0037013