UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-21829-CIV-GOODMAN

[CONSENT CASE]

MAURICIO ALTMAN,

       Plaintiff,

vs.

STERLING CATERERS, INC.,
JONATHAN RAPP,

       Defendants.

_____/

## ORDER DENYING DEFENDANTS' SUMMARY

## JUDGMENT MOTION AND GRANTING IN PART AND

## DENYING IN PART PLAINTIFF'S SUMMARY JUDGMENT MOTION

This matter is before the Court on the Motion of Defendants, Sterling Caterers, Inc. and Jonathan Rapp, for Summary Judgment, and the Motion of Plaintiff, Mauricio Altman, for Summary Judgment. [ECF Nos. 39; 43]. In addition to reviewing the motions and memoranda, the Court also held a hearing on the summary judgment motions, which are largely mirror image motions seeking rulings on either side of the same issues.

For the reasons outlined below, the Court **denies** Defendants' summary judgment motion in its entirety, **grants** the unopposed portions of Plaintiff's summary

judgment motion, **grants** Plaintiff's summary judgment motion concerning the so-called ministerial exemption and **denies** all remaining summary judgment requests for relief.

## I. INTRODUCTION AND FACTUAL BACKGROUND

This is an action alleging overtime and minimum wage violations under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"). Altman brought this claim against Sterling, a kosher catering company, and Jonathan Rapp, an owner and officer of Sterling. Altman worked as a *mashgiach* at Sterling during the times relevant to this lawsuit. Altman seeks damages for Defendants' alleged failure to pay him overtime and minimum wages pursuant to the FLSA. [ECF No. 1].

A *mashgiach* is "a person who certifies that food is kosher." *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 247 F. Supp. 2d 728, 729, n.2 (D. Md. 2003). A *mashgiach* "ensures that the laws of Kashruth are enforced, and that the community's religious trust is protected. Kashruth is compliance with Jewish kosher laws. Compliance with the laws of Kashruth depends on the *Mashgiach's* integrity and expertise. Additionally, a *Mashgiach* is essential, may be required on the premises at all times, must be present to check all products brought into the establishment and must also be present during the preparation of food." *Id.* (emphasis added). An on-site *mashgiach* like Altman is "a rabbinic monitor provided by a third-party kosher certification and monitoring agency." *Ahava Dairy Prods. Corp. v. Swiss Heritage Cheese, Inc.*, No. CV-02-4045, 2002 WL 31988778, at *1 (E.D.N.Y. Dec. 27, 2002).

Sterling is a catering company that provides kosher food at the David Posnack Jewish Community Center in Davie, Florida. Sterling provides kosher meals in accordance with OK certification. Circle K is a national agency which supervises kosher establishments. As the *mashgiach*, Altman oversees the food preparation to make sure that items entering the Jewish Community Center comply with OK's standards and that there is sufficient separation between the dairy, meat and non-dairy food items. Rabbi Golowinski is the local representative for Circle K and helps procure *mashgiachs*.

Defendants seek summary judgment in their favor and raise the following arguments: (1) Altman is an independent contractor, not an employee, and is therefore not subject to the FLSA, (2) Altman is not subject to the FLSA because he falls under the executive exemption, and (3) the *mashgiach* position falls within the so-called "ministerial exemption" to the federal employment laws.

After Defendants filed their summary judgment motion, Plaintiff filed his own summary judgment motion (in addition to contesting Defendants' motion). Plaintiff seeks summary judgment on five grounds: he seeks rulings that (1) Sterling is an "enterprise" under the FLSA, (2) Rapp is an employer for FLSA purposes, (3) Altman is a Sterling employee for FLSA purposes, (4) Altman is not an executive exempt under the FLSA, and (5) the FLSA has no ministerial exemption but, even if such an exemption existed under the statute, it is inapplicable to this case.

Defendants do not object to the first two grounds in Plaintiff's summary judgment motion listed above.  In their Response [ECF No. 46], Defendants advise that they do not dispute "that the enterprise is subject to the statute for purposes of non-exempt employees" and that "Jonathan Rapp would be an employe[r] under the statute to an employee of Sterling."  However, Defendants argue that Plaintiff never "qualified [as] an employee in the first instance" and, if he were an employee, then he would be exempt under the FLSA and the Court should grant summary judgment to Defendants.

Because Defendants do not contest the first two aspects of Plaintiff's summary judgment motion and because Plaintiff's motion supports those two grounds, the Court **grants** summary judgment in Plaintiff's favor on those two points.  For the reasons below, the Court also grants summary judgment to Plaintiff in part and denies it to Defendants as to the alleged ministerial exemption because the Court determines it is inapplicable as a matter of law in this case.[1]  Thus, *if* Plaintiff establishes at trial that he was Defendants' employee (**and** no exemptions apply, such as those for independent contractors or executive supervisors), then Defendants will be responsible for any FLSA violations (if any) that occurred during Plaintiff and Defendants' employee-employer relationship.

All other summary judgment issues raised by the parties are contested, however, and there are genuine issues of material fact that preclude the entry of summary

---

[1]  As discussed below, the Court is not ruling on whether the exemption *could* apply in the FLSA context because it is not necessary.

judgment in any party's favor on these remaining issues.  Therefore, the Court must deny Defendants' summary judgment motion and the remaining parts of Plaintiff's summary judgment motion.

## II. DISCUSSION

As noted above, the main issue in both motions is the applicability of the three FLSA exemptions raised by the parties.  The Court will therefore address these issues in turn.

### a. Rule 56

Federal Rule of Civil Procedure 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  All evidence considered on a motion for summary judgment must be "viewed in a light most favorable to the nonmoving party."  *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994) (citing *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

### b. Exemptions Generally to the FLSA

The Eleventh Circuit summarized the application of FLSA overtime exemptions as follows:

> **The employer bears the burden** of proving that an employee is exempt from overtime payments. *Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 804 (11th Cir. 1991). FLSA provisions are to be interpreted liberally in the employee's favor and its exemptions

> construed narrowly against the employer. *See Birdwell v. City*
> *of Gadsden,* 970 F.2d 802, 805 (11th Cir. 1992).

*Rock v. Ray Anthony Int'l, LLC*, 380 F. App'x 875, 877 (11th Cir. 2010) (emphasis added).

Thus, a defendant must prove the applicability of any urged exemptions and a court

will construe the applicability of exemptions narrowly against the employer. *Hogan v.*

*Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004). In addition, the Defendant employers

must prove the applicability of an exemption by clear and affirmative evidence.

*Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001).

### i. *Multiple Employers Sharing Common Control*

Plaintiff cites law to support the proposition that multiple employers can share

common control of an employee. [ECF No. 43 at 6]. Nonetheless, Plaintiff does not

explicitly argue that Sterling shares control of Plaintiff with another employer and does

not request summary judgment specifically on this issue. *Id*. Defendants do not

address this issue in their motion or memoranda, although they do suggest that Circle

K is arguably Plaintiff's sole employer. [ECF Nos. 39; 46].

However, the potential issue of multiple employers sharing common control is

indirectly relevant to the competing summary judgment motions as it relates to the

critical issue of which employer(s) controlled Altman and ultimately whether he was

Defendants' employee or an independent contractor.

### ii. *Independent Contractor Exemption*

The FLSA applies to employees but does not apply to independent contractors. *Rodilla v. TFC-RB, LLC*, No. 08-21352, 2009 WL 3720892, at *15 (S.D. Fla. Nov. 4, 2009); *see also Freund v. Hi-Tech Satellite, Inc.*, 185 F. App'x 782, 782 (11th Cir. 2006) (affirming determination that an individual was an independent contractor and therefore exempt from the FLSA). Determining whether an individual is an employee or an independent contractor does not depend on isolated factors; the determination is based on the "underlying economic realities" as exposed by the "circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727, 730 (1947).

The Eleventh Circuit has adopted several factors as a guide:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship;
>
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Fruend*, 185 F. App'x at 783; *see also* 29 C.F.R. § 500.20(h)(4) (adopting the economic realities test and the guiding factors as articulated by the federal courts to determine employment status under the FLSA).

In this case, there are genuine disputes over material issues of fact concerning the independent contractor exemption.  Defendants emphasize facts showing that they had no (1) control over the manner in which Plaintiff's work was performed and that Circle K had the final say on how Plaintiff performed his duties.  [ECF No. 39 at 7].  But Plaintiff points to facts which he argues show that Defendants had control because they, in effect, determined what time Plaintiff had to be at work and scheduled his hours.  [ECF No. 43 at 7].  In addition, Plaintiff notes that Defendants were responsible for paying him and kept track of the hours he worked.  [ECF No. 43-1 at ¶ 23].  Defendants underscore the fact that neither Defendant could fire Altman because it was up to Circle K and Rabbi Golowinski to decide whether to terminate him.

Defendants did not address (2) Altman's opportunity for profit or loss or (3) investment in equipment.  [ECF No. 39 at 7].  Plaintiff notes that he was merely an hourly employee with no opportunity for profit or loss.  [ECF No. 43 at 8].  He also points out that he did not (3) invest in any equipment.  [ECF No. 43 at 9].

On the other hand, Defendants underscore that (4) Plaintiff received instructions and training from *Circle K*.  [ECF No. 39 at 7].  Plaintiff relies on facts establishing that

he did not have a special degree or license and was dependent on the Rabbi's expertise to kosher an oven because Plaintiff was unable to do this. [ECF No. 43 at 9].

Defendants stress that there was no (5) permanency of the working relationship because *Circle K* originally placed Plaintiff in the job and controlled Plaintiff's continued employment. [ECF No. 39 at 7]. But Plaintiff responds by arguing that the relationship was permanent because it was maintained over a period of years. [ECF No. 43 at 10].

Defendants do not address whether Plaintiff was (6) an integral part of the employer's business. [ECF No. 39 at 7]. Plaintiff argues that his position was integral because he maintained Defendants' kosher status, which was required for Defendants to operate as a kosher food provider. [ECF No. 43 at 10].

After reviewing the record, the Undersigned concludes that fundamental factual disputes concerning factors (1) and (5), at a minimum, warrant a denial of both motions for summary judgment on the competing employee and independent contractor arguments. To be sure, these six factors are a guide, are not exhaustive and no single factor is dispositive. *Muller v. AM Broadband, LLC*, No. 07-60089, 2008 WL 708321, at *2 (S.D. Fla. Mar. 14, 2008).

While all of these factors are not in dispute, the overriding concern in determining employment status is economic dependence and the Court concludes that the dispute over factors (1) and (5) goes to the heart of this concern. *See Fruend*, 185 F. App'x at 783. An employee is most dependent on whoever controls the nature of his

work and the permanency of his position.   The core question of dependency is unresolved and genuinely at issue.  Thus, the Court denies both motions in regards to the independent contractor exemption.

### iii.    Executive Exemption

The overtime requirements of the FLSA are inapplicable to an employee "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).  The ultimate inquiry for application of the executive exemption is whether Plaintiff's "primary duty" was "management." *Brillas v. Bennett Auto Supply, Inc.*, 675 F. Supp. 2d 1164, 1168 (S.D. Fla. 2009).   According to Department of Labor ("DOL") Regulations, the employer must satisfy both a "salary basis" test and a "primary duties" test to demonstrate that an employee qualifies for this exemption.  *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625-26 (11th Cir. 2004) (adopting the salary/duties tests from the DOL regulations as the tests for whether the executive exemption applies); 29 C.F.R. § 541.200.

### 1.  *Salary Basis Test*

An employee satisfies the "salary basis" test if he is "compensated on a salary or fee basis at a rate of not less than $455 per week." 29 C.F.R. § 541.200.  Payment is on a "salary basis" if the employee receives "a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a).

Payment of an hourly wage is not payment on a "salary basis" within the meaning of the regulations unless a minimum guaranteed predetermined number of paid hours exists. *Magyar v. Davey Tree Expert Co.*, No. 8:08-1181, 2009 WL 3241981, at *2 (M.D. Fla. Oct. 5, 2009).

In this case, the only payment records filed with the Court are unclear and illegible. [ECF No. 39-1]. Moreover, the Court cannot determine from those records whether Plaintiff had a guaranteed minimum predetermined number of paid hours or if he simply received an hourly wage. *Id.* Neither the illegible records nor the memoranda submitted by the parties establish the specific hours Plaintiff worked, or why some weeks he received two payments on the same day. *Id.* Defendants' Motion for Summary Judgment argues, relying on these payment records and Mr. Rapp's Affidavit, that payment was $600 per week or $15 an hour.[2] [ECF No. 39 at 8]. It is not clear whether this means there was a $600 minimum with a rate of $15 per hour for any work above 40 hours per week or that the pay rate was $600 per week unless Plaintiff worked less than 40 hours in which case he would be paid $15 per hour, or some other meaning.

---

[2]    Defendants rely on an outdated legal standard when they state that the tests used for the executive exemption are the "short test" and the "long test" and that the minimum required salary is $250 per week. [ECF Nos. 39 at 7-8; 46 at 8]. The current minimum salary requirement is $455 and the current test, although similar to the old test, is the "primary duty test." 29 C.F.R. §§ 541.602, 541.700; *see also Brillas*, 675 F. Supp. 2d at 1167 (outlining the history of the executive exemption tests).

Relying on Rabbi Golowinski's Deposition, Plaintiff argues that payment was $15 an hour with no minimum guaranteed pay, but does not cite to any specific, undisputed facts to support the requested conclusion that there was no minimum guaranteed pay. [ECF No. 42 at 11]. In his Motion for Summary Judgment, Plaintiff makes the same argument he made in response to Defendants' motion. [ECF No. 43 at 12]. Defendants, in their Response to Plaintiff's Motion for Summary Judgment, make the same arguments they made in their summary judgment motion. [ECF No. 46 at 9]. Taking the facts in a light most favorable to the non-moving parties on the mirror image motions, the Court concludes that there are material issues of fact about whether Plaintiff's pay satisfied the "salary basis" test in both summary judgment motions.

Because the Court finds that material issues of fact exist in both motions[3] (i.e., the Court cannot determine whether the "salary basis" test was conclusively satisfied or unsatisfied), the Court must deny both motions on the executive exemption issue unless this Court also finds conclusively that the Defendant employers failed to sufficiently demonstrate that they prevail on the "primary duty" test. *See Hogan*, 361 F.3d at 625. If

---

[3]     Moreover, the Court reviewed the OK Kosher Certification Caterer Certification Agreement [ECF No. 51-1], which was submitted after the hearing and was not specifically addressed in either motion. While the certification agreement does mention a salary, this does not clear up the murkiness surrounding the salary/hourly wage issue because the actual payment records remain unclear. Furthermore, the Plaintiff is not a party to this agreement and therefore is not bound by it. Finally, it is unclear whether the parties to the written contract had a unique business purpose behind their use of the term salary, and the Court cannot conclusively determine if the term is binding for FLSA exemption purposes.

this Court finds that the "primary duty" test can be resolved in Plaintiff's favor, then the Court can deny summary judgment for the Defendants and grant summary judgment to the Plaintiff on the executive exemption because the salary/duty test is conjunctive. *See id.* In other words, Defendants must establish *both* standards in order to obtain the exemption.

2.  *Primary Duty Test*

The DOL regulations require satisfaction of three factors for an employee to be a bona fide executive (the list begins at number two because the first factor is the salary basis test). The regulations state that the employee must be one:

> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of employees are given particular weight.

29 C.F.R. § 541.100 (2004). This regulation is similar to the former tests (the "long test" and the "short test") and the case law analyzing the former tests still applies. *Brillas*, 675 F. Supp. 2d at 1167.

A court in this District has recognized additional factors under the former tests, including: the frequency of exercise of discretion, relative freedom from supervision

and the relationship between the employee's salary and the wages of the people performing the non-exempt work that the employee performed. *Id.* That court held the analysis for the "primary duty" test should not focus on whether Plaintiff spent most of his time on managerial duties; the test should instead focus on whether Plaintiff's managerial duties constituted the primary value Defendants placed on Plaintiff. *Id.; see Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268, 1272-79 (S.D. Fla. 2004) (finding an employee exempt although he spent 90% of his time on non-exempt work).

In this case, Defendants, in their Motion for Summary Judgment and in their Response to Plaintiff's Motion for Summary Judgment, argue that Plaintiff satisfied the "primary duties"[4] test for the following reasons. [ECF Nos. 39 at 8-9; 46 at 9-10]. First, Plaintiff's duty to oversee Kashruth and the requirement that he oversee all food production for Sterling qualifies as management of the enterprise. [ECF Nos. 39 at 8; 46 at 9]. Second, Plaintiff managed the enterprise because he and Rabbi Golowinski had the only keys to Sterling's freezers -- and work therefore could not start without him. [ECF Nos. 39 at 8; 46 at 9]. Third, Plaintiff had the authority to cease all work at Sterling. [ECF Nos. 39 at 9; 46 at 9]. Fourth, Plaintiff had the power to replace himself with the Rabbi's approval, a power unique to his position. [ECF Nos. 39 at 9; 46 at 9].

---

[4]     Defendants rely on the outdated "short test" which is similar to the current test. [ECF Nos. 39 at 8-9; 46 at 8-10]; *see Brillas*, 675 F. Supp. 2d at 1167 (outlining the history of the executive exemption tests).

Plaintiff, in his Response to Defendants' Motion for Summary Judgment and in his Motion for Summary Judgment, argues that the "primary duties" test is not satisfied because he does not have the authority to hire or fire other employees. [ECF Nos. 42 at 12; 43 at 13]. But the material issue of whether Plaintiff's ability to replace himself with the Rabbi's approval constitutes the power to hire and fire as required by the DOL regulations is still open and the parties have not cited authority to conclusively resolve this question. Accordingly, the Court denies both motions' requests to decide whether Plaintiff is an exempt executive.

### iv.   *Ministerial Exemption*

Neither the Eleventh Circuit nor any of its district courts have ruled (at least in published opinions) on whether there is a ministerial exemption to the overtime requirements of the FLSA. The Eleventh Circuit did recognize a ministerial exemption in a different context: when a Title VII suit would have led to excessive government entanglement with religion, as prohibited by the Establishment Clause of the First Amendment. *Gellington v. Christian Methodist Episcopal Church, Inc.*, 203 F.3d 1299, 1303-04 (11th Cir. 2000).

The parties agree and concede, as they must, that there is no ministerial exemption in the text of the FLSA. Consequently, Defendants must confront the fundamental rules governing FLSA cases -- which provide that exemptions must be construed strictly and narrowly, given the broad remedial purpose underlying the Act.

*See generally Patel v. Quality Inn S.*, 846 F.2d 700, 702 (11th Cir. 1988) (explaining that the definitional framework -- a broad definition of employee followed by specific and limited exceptions -- strongly suggests that Congress intended an all encompassing definition of the term "employee" that would include all workers not specifically exempted).

But the Court need not grapple with the core issue of *whether* the ministerial exemption applies to FLSA cases.   Instead, the Court can decide the competing summary judgment motions by concluding that the ministerial exemption (if it applies at all) is inapposite here because Sterling is a for-profit commercial caterer, not a religious institution.

Defendants rely upon *Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*, 363 F.3d 299 (4th Cir. 2004), where the appellate court relied upon the ministerial exemption to affirm a summary judgment in favor of a predominantly Jewish nursing home in an FLSA action brought by a *mashgiach* seeking unpaid overtime wages.   Although the court there used the primary duties test to determine the scope of the ministerial exemption it found existed under the FLSA, it also limited its holding by adopting several principles which restrict the ministerial exemption: (1) the exemption applies only to employment relationships between religious institutions and their ministers; (2) the exemption does not apply to commercial activities of religious institutions; and (3)

the exemption does not apply to the religious employees of secular employers or the secular employees of religious employers. *Hebrew Home*, 363 F.3d at 307.

The written guidelines of the United States Department of Labor, the federal agency tasked with enforcing the FLSA, suggest that no ministerial exemption would immunize Sterling from complying with the wage and hour requirements of the statute. Specifically, the *Field Operations Handbook*, Wage and Hour Division, U.S. Department of Labor, § 10b03 (1993) provides in relevant part:

> **Religious, charitable and nonprofit organizations, school institutions, volunteer workers, members of religious orders.**
>
> (a) There is no special provision in the FLSA which precludes an employer-employee relationship between a religious, charitable or nonprofit organization and persons who perform work for such organization. For example, a church or religious order may operate an establishment to print books, magazines, or other publications and employ a regular staff who do this work as a means of livelihood. In such cases there is an employer-employee relationship for purposes of the Act.

Likewise, the same Field Operations Handbook section (in sub-paragraph (b)) also provides that "[p]ersons such as nuns, monks, priests, lay brothers, ministers, deacons and other **members of religious orders** who serve pursuant to their **religious obligations** in the schools, hospitals, and other institutions **operated by their church or religious order** shall not be considered to be 'employees.'" (emphasis added).

With these principles in mind, the Undersigned notes that Sterling is a caterer, not a religious order. And Altman is not a rabbi or member of a religious order.

Thus, even if the Eleventh Circuit were to recognize a ministerial exemption in FLSA cases -- even though it appears nowhere in the statutory text and doing so may be contrary to the well-established rule that exemptions are construed narrowly -- Defendants here would need to prove both that Plaintiff's duties are ministerial and that Sterling Caterers is a religious institution. Even the Fourth Circuit Court of Appeals, which decided *Hebrew Home*, held in a prior case it relied upon in *Hebrew Home*, that "the ordinary commercial activities of religious organizations are covered by the Act." *Dole v. Shenandoah Baptist Church*, 899 F.2d, 1389, 1394, n.6 (4th Cir. 1990) (affirming judgment against church-operated schools for FLSA violations for teachers and nonprofessional support staff); *see also Brock v. Wendell's Woodwork, Inc.*, 867 F.2d 196 (4th Cir. 1989) (holding that the FLSA applies to a masonry contractor which employed children under arrangement with religious group).

Defendants have not demonstrated that Sterling, a for-profit catering business corporation, is a religious institution. In fact, their summary judgment motion does not persuasively show how Sterling is a religious institution or how Altman's duties are ministerial. The same can be said for their identical arguments on the ministerial exemption found in their response in opposition to Plaintiff's mirror image summary judgment motion.

Assuming that the limited ministerial exemption found by the Fourth Circuit in *Hebrew Home* would also be recognized by the Eleventh Circuit or Supreme Court, comparing the factors relied upon there to the facts here yields significant differences which account for different results.

In *Hebrew Home*, the court found Hebrew Home to be a religious institution because the by-laws defined it as a religious and charitable non-profit corporation, the Home maintained a rabbi on its staff, the Home employed a *mashgiach* and placed a mezuzah[5] on every resident's doorpost. The Hebrew Home also maintained a synagogue on its premises and held twice-daily religious services conducted by an ordained rabbi, who served as a full-time employee.

Unlike the Hebrew Home defendant, the defendant here -- Sterling, a for-profit catering corporation -- cannot be said to have the characteristics the Fourth Circuit deemed significant in concluding that the defendant there -- a non-profit religious and charitable corporation -- was a religious institution. Although Sterling provides kosher food to the Jewish Community Center, it also provides non-kosher food. As a for-profit catering company providing both kosher and non-kosher food, Sterling is more akin to a restaurant serving special food to customers than a religious institution. Therefore, assuming that a ministerial exemption exists under the FLSA -- which the Court is not

---

[5]     That Court relied upon Random House Webster's Unabridged Dictionary 1212 (2d ed. 1998) to provide the definition of a mezuzah: "a parchment scroll inscribed on one side with the Biblical passages Deut. 6:4-9 and 11:13-21 and on the other side with the word *Shaddai* (a name applied to God), inserted in a small case or tube . . . and attached by some Jews to the doorpost of the home." *Hebrew Home*, 363 F.3d at 301.

deciding -- Defendants cannot meet the first prong of the standard used in the Fourth Circuit because Sterling is not a religious institution.

Because the Court has determined that Sterling is not a religious institution, a conclusion which precludes application of the ministerial exemption, the Court need not analyze whether Sterling has established the other requirement for the exemption -- that Altman performed ministerial duties for Sterling.

### III. CONCLUSIONS

For the reasons stated above, the Court:

1. **Grants** summary judgment in Plaintiff's favor on the issue of whether Sterling is an enterprise and whether Sterling and Rapp are employers (assuming that Altman is an employee and not an independent contractor, an issue the Court specifically refrains from deciding).

2. **Grants** summary judgment in Plaintiff's favor on the issue of whether the ministerial exemption applies to the instant case.   The Court concludes, without determining if such an exemption exists at all in FLSA cases, that the exemption is inapplicable here because Sterling is not a religious institution.

3. **Denies** all other summary judgment requests contained in the competing motions.

**DONE AND ORDERED**, in Chambers, in Miami, Florida, this _____ day of July, 2012.

_____
JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**

**All counsel of record**